## HAMMOND v. JONES.

[No. 5,989.   Filed January 10, 1908.]

1. LANDLORD AND TENANT.—*Sale of Lands.—Rights of Tenant.*— The tenant of a grantor becomes the tenant of the grantee with the same rights and duties as formerly existed with the grantor. p. 35.

2. SAME.—*Tenancy from Year to Year.—Notice to Quit.*—A tenant from year to year is entitled to notice to quit. p. 35.

3. SAME.—*Failure to Give Tenant Possession.—Recourse.*—A tenant who is refused possession by a prior tenant's holding over has a right of action in damages against the landlord, though such landlord be a grantee of both tenants' original landlord. p. 36.

Hammond v. Jones—41 Ind. App. 32.

4. LANDLORD AND TENANT.—*Quiet Enjoyment.—Attornment.—Rentals.*—The leasing of land carries an implication of quiet enjoyment, and the sale of the rented land determines the grantor's relation, as landlord, with the tenant, possession being transferred without attornment, and the rentals being due and payable to the grantee. p. 37.

5. DEEDS.—*Covenants.—Possession.—Tenancy.*—The continued possession of a tenant, from year to year, in possession at the time of the execution of a warranty deed, does not constitute a breach of covenant. p. 37.

6. LANDLORD AND TENANT.—*Holding Over.—Subsequent Tenant.*— A subsequent tenant has no right of action against a prior tenant who lawfully holds over because of the failure of the landlord to give him a notice to quit. p. 37.

7. SAME.—*Grantee.—Obligation to Tenant.—Contracts.*—Where the grantee purchases land, knowing the terms and conditions of a lease thereon, the tenant is required to pay the rentals to such grantee; and the grantee is required to carry out the terms of such lease. p. 38.

8. SAME.—*Tenant Holding Over.—Subsequent Tenancy.—Liability of Grantee.*—Where the grantee purchases lands, knowing the same to be rented from year to year, and he takes no steps to determine such tenancy, he is liable to a subsequent tenant to whom the grantor had leased such land for the coming year, the prior tenant holding over and preventing the subsequent tenant from taking possession. p. 38.

9. CONTRACTS.—*Duty Created by Law.—Inability to Perform.*— Where the law creates a duty, and the defendant is wholly unable to perform same, he cannot be held liable for the breach thereof. p. 39.

From Fayette Circuit Court; *L. L. Broaddus,* Special Judge.

Action by Charles Jones against John G. Hammond. From a judgment for plaintiff, defendant appeals. Affirmed.

*McKee, Little & Frost,* for appellant.
*Francis M. Alexander,* for appellee.

MYERS, J.—Appellee brought this action against appellant to recover damages on account of a breach of a rental contract. The issue was formed by a complaint in one paragraph, answered by a general denial. Trial by the court,

and a finding for appellee, assessing his damages at $145.48. Appellant's motion for a new trial was overruled, and judgment rendered against him.

The only error relied on for a reversal of this judgment is the overruling of the motion for a new trial. Under this assignment it is argued that the decision of the court is not sustained by sufficient evidence, and that the court erred in refusing to admit certain testimony.

From the undisputed facts it appears that appellant was the grantee of certain lands in Franklin county from one Gant. In August prior to the purchase of the land by appellant in September, 1903, his grantor entered into a verbal contract with appellee whereby said land was leased to appellee for the term of one year. By the terms of said lease appellee was to have possession of a part of said land from the day of the contract, for the purpose of sowing the same in wheat, and to have possession of the entire farm March 1, 1904. Pursuant to said contract appellee entered upon the land and sowed seven acres in wheat, and worked out the road tax on the land, the latter being in consideration for the use of the farm buildings and a truck patch. While on the land and engaged in sowing wheat, appellant and Gant appeared and informed appellee that Hammond had bought the land, and from that time would be his landlord, Hammond at the time telling him to go ahead and farm the place on the terms of the contract with Gant, and ·it would be all right. Appellant at the time he purchased the land knew of the Jones lease and its terms. The land was conveyed by a general warranty deed October 3, 1903. At the time the contract between Gant and appellee was made, and at the time of the execution of said deed, Leonard Ward was in possession of the land and had occupied the same as a tenant of Gant for about five years. Ward took actual possession of the wheat ground in the fall, and the remainder of the farm in March following. Neither Gant nor appellant made any contract with Ward relative to leasing the

land to him for the purpose of sowing wheat in the fall of
1903, or for any purpose for the year 1904. About the time
appellee had finished sowing the seven acre tract of wheat
Ward ordered him to take his tools and get off the premises
and stay off. Ward based his right to retain the premises to
the exclusion of appellee by reason of the fact that he had
leased the land from Gant some five years prior to that time,
and not from any authority, advice or counsel from appel-
lant. Ward retained and remained in possession of all of
the land, except the seven-acre tract, during the entire term
for which appellee had rented the same. Appellant took no
steps whatever to oust Ward, and in the latter part of
October, 1903, at the request of Gant and appellee, appel-
lant met them in Brookville, and the question of the right
of appellee to have the farm was discussed, Gant saying
that he had rented the farm to Jones and that he ought to
have it, and that Ward ought to be put off. Jones claimed
that if he did not get the farm he would be damaged. Ham-
mond, according to his testimony, denied that he had rented
the farm to either Jones or Ward, and that he "didn't pro-
pose to mix in it," and if Jones was damaged he should look
to Gant for such damages.

The law is that a tenant of a grantor of lands becomes
the tenant of the grantee, with no greater or less right by
reason of the change of ownership, and such tenancy,
1. under the law, may be terminated and possession re-
covered by the grantee in the manner provided in
such cases for an original lessor. *Swope* v. *Hopkins* (1889),
119 Ind. 125; *Kellum* v. *Berkshire Life Ins. Co.* (1885),
101 Ind. 455; *Ream* v. *Goslee* (1898), 21 Ind. App. 241.

There is no question as to the validity of the Jones lease,
and had the court found, as appellant claims, that Ward's
tenancy was from year to year, he was entitled to
2. notice to quit (§7090 Burns 1901, §5209 R. S. 1881;
*Elliott* v. *Stone City Bank* [1892], 4 Ind. App. 155),
and there was evidence to authorize a finding that the year

terminated in March. The law made ample provision for his ouster at the end of the year. No effort was made by appellant to use the machinery at his command to place appellee in possession, but, on the contrary, the evidence would warrant the finding that he refused to do so. Appellant argues that "if appellee had a leasehold estate in the land he had the power to enforce his right against Ward, and if he neglected to do so he cannot hold appellant liable for the consequences of his own neglect." *Huffman* v. *Starks* (1869), 31 Ind. 474. He also denies liability on the ground that there was no evidence of any contractual relation between appellee and himself, and no evidence "that appellant was guilty of any tort, or that he in any way interfered with appellee's possession of the farm." It is clear if appellant is to be held liable in damages it is for a violation of the contract. In *Huffman* v. *Starks, supra,* the court, after considering a number of cases, concludes that such cases hold "that where there is a valid parol demise, and an unqualified promise to pay rent in consideration thereof, the possession may be recovered by the tenant, and the rent may be recovered by the landlord, these being remedies attaching to it 'in its character of lease,' * * * but mere damages are not recoverable for withholding the possession from the tenant, nor for his refusal to occupy." In that case the action was by the lessee against the lessor to recover possession, and the question was, whether the contract was within the statute of frauds. The lease was held valid, and the question then arose as to the remedy for its enforcement, and upon this question the court said: "The lease is undoubtedly valid, and there is nothing in our statute indicating a purpose to deny to the parties such remedies for violations of the contract as would appertain to violations of other valid contracts."

In our judgment, in cases of this character the lessee is not bound to seek redress by a suit for possession, but may maintain an action for damages against his landlord for a breach

of his agreement. *Rothman* v. *Kosower* (1905), 48 Misc. (N. Y.) 538, 96 N. Y. Supp. 268; *Berrington* v. *Casey* (1875), 78 Ill. 317; *Clark* v. *Butt* (1866), 26 Ind. 236; *Albey* v. *Weingart* (1904), 71 N. J. L. 92, 58 Atl. 87; *Rice* v. *Whitmore* (1888), 74 Cal. 619, 16 Pac. 501, 5 Am. St. 479; *Trull* v. *Granger* (1853), 8 N. Y. 115; *Poposkey* v. *Munkwitz* (1887), 68 Wis. 322, 32 N. W. 35, 60 Am. Rep. 858; *Avan* v. *Frey* (1879), 69 Ind. 91; 1 Taylor, Landlord and Tenant (9th ed.), §176.

In *Eldred* v. *Leahy* (1872), 31 Wis. 546, 551, it is held to be "well settled at common law, that a covenant for quiet enjoyment is implied in every mutual contract for the leasing and demise of land, by whatever form of words the agreement is made." After the sale of the land Ward was no longer the tenant of Gant. The execution of the deed transferred the possession without attornment. *Kellum* v. *Berkshire Life Ins. Co., supra.* And the rent maturing became the property of Hammond. *Chandler* v. *Pittsburgh Plate Glass Co.* (1898), 20 Ind. App. 165; *Indianapolis, etc., R. Co.* v. *First Nat. Bank* (1893), 134 Ind. 127. Nor did the continued possession of Ward constitute a breach of any covenant in the deed. *Kellum* v. *Berkshire Life Ins. Co., supra.* As we have seen, a change of title to the land brought a new landlord for Ward, and the latter being rightfully and lawfully in possession of the land his tenancy could be "determined" and rendered unlawful by giving notice as provided in such cases. §7090, *supra.* Appellant, as the landlord of Ward, by his failure to act, impliedly consented to the holding over by Ward, and such holding thereby became lawful, and there being no relation of landlord and tenant between Ward and appellee there was no right of action in favor of the latter against Ward. *King* v. *Reynolds* (1880), 67 Ala. 229, 42 Am. Rep. 107; *Rothman* v. *Kosower, supra.* The lease of appellee "cannot be said to have divested the landlord of the power to put the lessee

[appellee] in possession, or of such a right of possession as is necessary for the institution of proceedings to oust the tenant holding over, and enable the landlord to carry out the contract contemplated by that instrument." *Vincent* v. *Defield* (1893), 98 Mich. 84, 56 N. W. 1104. True, the contract as originally made was with appellant's grantor, but there is evidence in the record from which the court

7. might have found that there was an express contract between appellant and appellee. As we have said, there is evidence tending to prove that he was apprised of the lease to appellee, acknowledged his position as landlord, and as such gave directions to appellee relative to its performance. No question but that the agreement obligated appellee to appellant for the rents. "If binding upon one party, it was likewise binding upon the other." *Huffman* v. *Starks, supra.*

The other reasons assigned by appellant in support of his motion for a new trial are that the court erred in refusing to permit Leonard Ward, a witness for appellant,

8. upon his direct examination, to answer the following questions: (1) "Was there anything said between you and Mr. Gant as to how long you were to have the land?" (2) "You may state, Mr. Ward, whether or not at the time you leased the land from Mr. Gant there was anything said as to the particular date on which the tenancy was to commence?" The answer to each of these questions was either "yes" or "no," and the questions were not objectionable. But on the theory that they would have been answered in the affirmative, and as preliminary questions to one calling for a conversation between the witness and Gant, to the effect that Ward's tenancy was rightful and that he could not be ousted, thereby furnishing an excuse for not putting appellee in possession, they would not tend to prove facts which would defeat a recovery, for the reason that appellant had actual knowledge of Ward's possession, and is presumed to have known all of the facts in that re-

gard which a reasonably prudent inquiry would have developed. This knowledge, together with his relation to appellee, would not exempt him from damages even though it were impossible for him to carry out the contract with the latter. His duty to appellee, if any, was created by the contract which he had made with appellee, and his inability to perform it will not excuse. A different rule applies where the law creates the duty and the party is unable to perform.

The court did not err in this ruling, and no available error is pointed out.

Judgment affirmed.